

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 21, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JULIE D.,[1]

　　　　　　　　Plaintiff,

　　　v.

FRANK BISIGNANO,
Commissioner of Social Security,

　　　　　　　　Defendant.

No.   2:25-cv-492-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Julie D. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits. Plaintiff claims she is unable to work due to several impairments, including a headache

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

disorder, as established by medical records and her testimony. Substantial evidence does not support the ALJ's decision because the ALJ did not adequately consider Plaintiff's headaches. This matter is remanded for further proceedings.

## I.    Background

Plaintiff filed her Title 2 application for benefits in February 2023, alleging disability beginning June 1, 2021, due to a left shoulder injury, bone spurs, arthritis, a rotator cuff tear, depression, asthma, chronic pain, and high blood pressure.[2]

Plaintiff appeared for a hearing before ALJ Marie Palachuk in February 2025, at which Plaintiff and a vocational expert testified.[3] Plaintiff testified that she had not worked since 2021 because she had shoulder surgery, back problems, and breast problems.[4] She had difficulties standing, walking, reaching, and lifting because of back pain; neck pain radiating down her arms; carpal tunnel; and

---

[2] Administrative Record (AR) 184–88, 226.

[3] AR 37–60.

[4] AR 44.

DISPOSITIVE ORDER - 2

"headaches every day."[5] She wore braces on both hands when she slept due to pain.[6] She received injections and was seeing a chiropractor to treat neck pain, with very little benefit.[7] She saw a counselor and took medication for anxiety.[8]

The vocational expert testified that a hypothetical individual of the same age, education, and work experience as Plaintiff limited to light work with some movement and postural restrictions, but no social restrictions, could work as a cashier, cafeteria attendant, or cleaner.[9] The vocational expert testified that the same hypothetical individual could not work those jobs if she was limited to two hours total of standing or walking during the workday or could lift only five pounds frequently.[10]

---

[5] AR 45–47.

[6] AR 48.

[7] AR 49–50.

[8] AR 51–52.

[9] AR 57–58.

[10] AR 59–60.

DISPOSITIVE ORDER - 3

The ALJ issued a decision finding Plaintiff not disabled.[11] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent" with the medical evidence and other evidence.[12] The ALJ considered the lay statements from Plaintiff's husband and found them not persuasive.[13] As to the medical opinions, the ALJ found:

- the reviewing opinions of Stanley S., MD, and Rudolf Titanji, MD, generally persuasive.

- the reviewing opinions of Gerald G., PhD, and Renee E., PhD, persuasive, with Dr. E.'s opinion more persuasive than Dr. G.'s opinion.

- the evaluating opinion of Tom Crisp, DO, somewhat persuasive.

---

[11] AR 17–31. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[12] AR 23. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[13] AR 29.

DISPOSITIVE ORDER - 4

- the evaluating opinion of Diane Kovac, PMHNP, not persuasive.[14]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through June 30, 2025.

- Step one: Plaintiff had not engaged in substantial gainful activity since June 1, 2021, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease in the cervical and lumbar spine; degenerative joint disease in the left shoulder; status post left rotator cuff tear repair; carpal tunnel syndrome; asthma; chronic pain; obesity; depression; and anxiety.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the following RFC:

---

[14] AR 27–29.

DISPOSITIVE ORDER - 5

> to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions. The claimant can perform postural activities occasionally but never climb ladders, ropes, or scaffolds. The claimant can frequently with the left hand, which is the non-dominant hand, handle and finger (the claimant is right hand dominant). The claimant can occasionally perform overhead reaching. The claimant should avoid concentrated exposure to extreme cold, respiratory irritants, and hazards. The claimant is able to maintain concentration, persistence or pace on simple, routine tasks for the two-hour intervals between regularly scheduled breaks.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a cashier, cafeteria attendant, and cleaner.[15]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[16] Plaintiff now appeals to district court.[17]

---

[15] AR 19–30.

[16] AR 1–3.

[17] ECF No. 1.

DISPOSITIVE ORDER - 6

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[18] and such error impacted the nondisability determination.[19] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20]

---

[18] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[19] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[20] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence

DISPOSITIVE ORDER - 7

### III.   Analysis

Plaintiff argues the ALJ erred in evaluating Dr. G.'s prior administrative medical finding, her headache disorder, and her subjective symptom testimony. The Commissioner argues the ALJ reasonably considered the persuasiveness of Dr. G.'s findings, reasonably considered Plaintiff's headaches, and reasonably discounted Plaintiff's subjective statements.

### A.    Headache Disorder: Plaintiff establishes consequential error.

Plaintiff argues the ALJ failed to adequately evaluate her headache disorder in three ways. First, Plaintiff argues that the ALJ failed to determine whether her headache disorder was a medically determinable severe impairment at step two. Second, acknowledging that the ALJ nevertheless proceeded past step two, Plaintiff argues that the ALJ failed at step three to evaluate whether her headache

---

cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

disorder medically equaled Listing 11.02(b) per Social Security Ruling (SSR) 19-4p. Third, Plaintiff argues that the ALJ failed to adequately evaluate how her headache disorder affected her ability to function when crafting the RFC. As explained below, the Court disagrees as to steps two and three, but agrees as to the RFC.

1. Step Two

When an ALJ resolves step two in a claimant's favor by finding a medically determinable severe impairment, any error in failing to find other severe impairments is harmless at step two; however, step-two error can be prejudicial at a later step in the sequential disability analysis.[21]

---

[21] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

DISPOSITIVE ORDER - 9

Here, the ALJ resolved step two in Plaintiff's favor despite not finding her headache disorder to be a medically determinable severe impairment, so any error is harmless at step two.[22] Whether any error affected the ALJ's step-three and RFC findings will be addressed below, as Plaintiff raises both arguments.

2.    Step Three

At step three, if a claimant meets all of the listing criteria or if her impairments medically equal a listed impairment, she is considered disabled.[23] Medical equivalence will be found if the medical findings are at least of equal medical significance to the required criteria.[24] The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairments meet or equal one of the

---

[22] AR 19.

[23] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

[24] 20 C.F.R. § 404.1526(d)(3); *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990).

DISPOSITIVE ORDER - 10

specified impairments set forth in the listings.[25] The ALJ need not recite the reasons for her step-three determination under the listings portion of the decision so long as the relevant evidence and underlying findings are discussed in the ALJ's decision.[26] The "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."[27]

SSR 19-4p, "Evaluating Cases Involving Primary Headache Disorders," provides that primary headache disorder is not a listed impairment, but an ALJ may still find that a primary headache disorder, alone or in combination with other impairments, medically equals a listing.[28] "Epilepsy (listing 11.02) is the most closely analogous

---

[25] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001); 20 C.F.R. § 404.1520(a)(4)(iii).

[26] *Lewis,* 236 F.3d at 513.

[27] *Burch,* 400 F.3d at 683.

[28] SSR 19-4p, 2019 WL 4169635, at *7.

DISPOSITIVE ORDER - 11

listed impairment for a[] [medically determinable impairment] of a primary headache disorder."[29]

Listing 11.02 Epilepsy requires documentation of a "detailed description of a typical seizure and characterized by" either frequent "[g]eneralized tonic-clonic seizures" or "[d]yscognitive seizures," or less frequent seizures with a marked limitation in physical or mental functioning.[30]

Here, the ALJ did not evaluate whether Plaintiff's headaches medically equaled listing 11.02 or otherwise discuss Plaintiff's headaches at step three.[31] Assuming for the sake of argument that this was error, any such error was harmless. The ALJ discussed Plaintiff's reported headaches elsewhere in her decision and there is no evidence of seizures in the record.[32] Moreover, Plaintiff never tried to establish

---

[29] *Id.*

[30] 20 C.F.R. pt. 404, subpt. P, App. 1.

[31] AR 20–21.

[32] *See* AR 22–23; 20 C.F.R. pt. 404, subpt. P, App. 1, Listing 11.02; *Lewis,* 236 F.3d at 513.

DISPOSITIVE ORDER - 12

equivalency to the criteria in the epilepsy listing.[33] Therefore, the ALJ committed no consequential error at step three.

    3.   <u>RFC</u>

SSR 19-4p also provides, "If a person's primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the sequential evaluation process, we assess the person's residual functional capacity (RFC)."[34] The RFC is "the most [the claimant] can still do despite [her] limitations."[35] The ALJ must base the RFC "on all the relevant evidence in [the] case record."[36] The ALJ must consider all medically determinable impairments, even those that are not "severe" at step two.[37] The ALJ must consider "all of the relevant medical and other evidence," "any statements about what [the claimant] can still do that

---

[33] *See Burch*, 400 F.3d at 683.

[34] SSR 19-4p, 2019 WL 4169635, at *7.

[35] 20 C.F.R. § 404.1545(a)(1).

[36] *Id.*

[37] *Id.* § 404.1545(a)(2).

DISPOSITIVE ORDER - 13

have been provided by medical sources, whether or not they are based on formal medical examinations," and "descriptions and observations of [the claimant's] limitations from [her] impairment(s), including limitations that result from [her] symptoms, such as pain, provided by [the claimant] . . . or other persons."[38]

When assessing the RFC based on the claimant's testimony, if the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[39] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[40]

---

[38] *Id.* § 404.1545(a)(3).

[39] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); 20 C.F.R. § 404.1529(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); SSR 16-3p, 2016 WL 1119029, at *7.

[40] *Smartt*, 53 F.4th at 499 (alteration added).

DISPOSITIVE ORDER - 14

Here, when explaining the RFC finding, the ALJ considered Plaintiff's June 2023 function report where she reported having "headaches daily from [her] neck hurting," Plaintiff's June 2024 function report where she reported having "constant headaches," and her hearing testimony that she had "headaches every day."[41] After reporting all of Plaintiff's other symptom reports, the ALJ made a boilerplate finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[42] The ALJ then discussed the medical records of lumbar pain, shoulder pain, neck pain, shoulder surgery, hand paresthesia, carpal tunnel syndrome, obesity, asthma, anxiety, and depression.[43] The ALJ next discussed the prior

[41] AR 22–23, 45, 244, 271.

[42] AR 23.

[43] AR 23–26.

DISPOSITIVE ORDER - 15

administrative medical findings and medical opinions, none of which touched on headaches.[44] The ALJ did not make any specific findings regarding headaches and did not incorporate any limitations based on headaches into the RFC.[45]

The ALJ's brief report of Plaintiff's relevant testimony, general discounting of all of Plaintiff's testimony, and omission of any discussion of headache evidence contradicts the significant evidence of headaches in the record. Plaintiff presented with headaches before and after her shoulder surgery in December 2022.[46] Plaintiff presented with headaches at the two consultative examinations in December 2023.[47] She continually reported having headaches at regular physical therapy appointments throughout 2024.[48] She reported having significant daily headaches to a spinal treatment center in August and September 2024

[44] AR 26–29.

[45] *See* AR 22–29.

[46] AR 518, 537.

[47] AR 1361, 1371.

[48] AR 1190, 1192–93, 1503–04, 1506–08, 1517, 1610, 1612, 1618.

DISPOSITIVE ORDER - 16

and to a physiatrist in October 2024.[49] On several occasions from November 2024 to January 2025, she presented with headaches to a chiropractor, who diagnosed her with "chronic tension-type headache, intractable," noted her medical history of migraines, and assessed her with migraines.[50] She was also assessed with headaches during a January 2025 sleep study.[51]

This evidence demonstrates numerous, consistent complaints and medical assessments of headaches that were never relieved by various treatments for Plaintiff's neck, shoulders, and back. On this record, the ALJ's failure to consider the headache evidence when crafting the RFC or inquire further as to Plaintiff's headaches falls short of the duty to fully and fairly develop the record.[52] Although an ALJ is not required to discuss every bit of evidence in the record, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and

---

[49] AR 2423, 2459, 2546.

[50] AR 2486, 2489, 2497, 2502, 2511, 2516, 2521, 2530, 2535.

[51] AR 2563–65.

[52] *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003).

DISPOSITIVE ORDER - 17

explore for all the relevant facts."[53] Additionally, the ALJ's general discounting of all of Plaintiff's symptom reports without acknowledging any potential limitations from headaches fails to provide a clear and convincing reason to discount her headache reports.[54]

The ALJ came closest to considering the headache evidence when the ALJ found that Plaintiff's neck pain was not more limiting than provided in the RFC,[55] because Plaintiff reported at the psychiatric evaluation and on one function report that her headaches were connected to her neck pain.[56] The ALJ considered that physiatrist Steven Hansen, DO, examined Plaintiff twice in October 2024 and found that Plaintiff had "extremely tight musculature across the cervical paraspinals, upper trapezius, and rhomboids bilaterally with

---

[53] *Garcia v. Comm'r of Social Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (cleaned up); *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).

[54] *See Smartt*, 53 F.4th at 499.

[55] *See* AR 24–25.

[56] AR 244, 1371.

marked tenderness palpation and identifiable trigger points," and "[p]ersistent tenderness palpation along the paraspinal musculature of the cervical spine near the lower parts of the cervical spine and upper trapezius region," but had "[f]ull active range of motion of the cervical spine and bilateral upper extremities," "5/5 strength bilateral[ly]," and "[m]ove[d] all extremities spontaneously" with "no focal deficits."[57] Dr. Hansen also noted that Plaintiff received two injections in late 2024 that temporarily provided "100% improvement" in her neck pain.[58]

Assuming the ALJ considered Dr. Hansen's notes as a reason to discount Plaintiff's headaches, they do not constitute clear and convincing reasons. No evidence shows that Plaintiff's headaches were caused only by her neck pain, such that improvement in the latter would necessarily improve the former. The notes themselves say nothing about headaches. And the few irrelevant, cherry-picked normal findings considered by the ALJ say nothing about headaches, and

---

[57] AR 2540, 2549.

[58] AR 2491.

DISPOSITIVE ORDER - 19

would not even be substantial evidence supporting a finding that Plaintiff's neck pain improved for purposes of long-term functioning.[59]

The Ninth Circuit case *Ferguson v. O'Malley* also requires finding the ALJ erred.[60] In *Ferguson*, the Ninth Circuit reversed and remanded because "substantial evidence d[id] not support the ALJ's RFC assessment because the ALJ did not articulate any specific, clear, and convincing reasons for discounting Ferguson's headache symptom testimony."[61] There, the claimant testified to having headaches and the ALJ "broadly stated that Ferguson's statements 'concerning the intensity, persistence and limiting effects of these symptoms are not

---

[59] *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record); *Ghanim*, 763 F.3d at 1164 (requiring the ALJ to consider the context of treatment records and discouraging the discounting of a claimant's reported symptoms based on nonrelevant normal findings).

[60] *Ferguson v. O'Malley*, 95 F.4th 1194 (9th Cir. 2024).

[61] *Id.* at 1204.

DISPOSITIVE ORDER - 20

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision,'" but the ALJ "failed to specify *which* of Ferguson's many symptoms were, in the ALJ's view, inconsistent with the record evidence."[62] "[T]he ALJ never expressly and specifically stated that Ferguson's *headache* symptom testimony was inconsistent with any particular record evidence, as it was required to do."[63] The ALJ seemed to discount the claimant's headaches because the claimant (1) presented at an examination with no neurological defects and a normal mood and affect, which the Ninth Circuit found irrelevant; and (2) underwent spinal decompression surgery, which the Ninth Circuit found not inconsistent with continued headaches.[64] Finally, the Ninth Circuit rejected the Commissioner's argument that it should affirm under *Britton v. Colvin*[65] because the

---

[62] *Id.* at 1200 (emphasis in original).

[63] *Id.* (emphasis in original).

[64] *Id.* at 1200–01.

[65] *Britton v. Colvin*, 787 F.3d 1011, 1013–14 (9th Cir. 2015) (holding that substantial evidence did not support limitations based on

DISPOSITIVE ORDER - 21

Commissioner overstated the holding of that case: "We did not hold, as the Commissioner asserts, that a claimant *always* must provide independent medical evidence to establish the severity of their headaches and can *never* rely on their own symptom testimony."[66]

This case is materially similar to *Ferguson*. Like the ALJ in *Ferguson*, the ALJ here made a boilerplate finding as to the inconsistency of Plaintiffs statements concerning the intensity, persistence, and limiting effects of symptoms without specifying headaches. The few normal findings in the neck-pain records— assuming the ALJ here relied on them in discounting Plaintiff's headaches—are irrelevant to headaches, just like the few normal findings in *Ferguson*. To the extent the ALJ here considered neck treatments as a reason to discount headaches, the record and the ALJ's decision lacks a connection between the two, just like the

---

migraines where there was "no independent medical evidence" of migraines and a medical expert's testimony about migraines relied exclusively on the claimant's non-credible testimony).

[66] *Ferguson*, 95 F.4th at 1202 (emphasis in original).

DISPOSITIVE ORDER - 22

decompression surgery in *Ferguson*. And the Commissioner here makes the same argument based on an overstated reading of *Britton* as the Commissioner did in *Ferguson*, so the Court rejects the argument.[67]

*Ferguson* is distinguishable because the claimant there described how his headaches specifically limited him.[68] Here, in contrast, Plaintiff did not specify which limitations were caused by headaches rather than any of her many other conditions. This does not make the ALJ's reasoning for rejecting Plaintiff's headaches any less unclear or unconvincing based on this record. Moreover, as explained, the ALJ's apparent failure to consider the headache medical evidence whatsoever or inquire further into headaches are errors additional to those committed in *Ferguson*.

In sum, substantial evidence does not support the ALJ's RFC finding because, on this record, the ALJ did not adequately consider the evidence of Plaintiff's headaches and did not provide clear and convincing reasons to discount Plaintiff's headache testimony.

---

[67] ECF No. 13 at 6.

[68] *See* 95 F.4th at 1198.

DISPOSITIVE ORDER - 23

**B.    Other Symptom Reports and Medical Opinions: The ALJ must reevaluate on remand.**

The inadequate consideration of Plaintiff's headaches impacted the RFC finding and the ALJ did not consider the rest of Plaintiff's symptom reports or the medical opinions in light of the medical evidence of headaches. Therefore, remand is required for a new disability determination, and the Court will not analyze Plaintiff's remaining challenges regarding her overall symptom testimony and Dr. G.'s prior administrative medical finding, which are likely to be affected when the ALJ takes into account the headache evidence.

## IV.    Conclusion

Plaintiff establishes the ALJ consequentially erred. On remand, the ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process. The ALJ is to consider the medical evidence of Plaintiff's headaches, provide Plaintiff the opportunity for a new hearing at which the ALJ is to inquire further into Plaintiff's headaches, and, if the ALJ discounts Plaintiff's reports of headaches, the ALJ is to articulate clear and convincing reasons for doing so.

Accordingly, **IT IS HEREBY ORDERED**:

1.   The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.   The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 13**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 21st day of May 2026.

EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 25